[L.A. No. 30981. Aug. 30, 1979.]

In re KATHY P., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
KATHY P., Defendant and Appellant.

**COUNSEL**

Katz, Hoyt & Bell, Irwin M. Friedman, Elie J. Gindi and Charles J. Katz for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Roy C. Preminger, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**NEWMAN, J.—** The main issue in this case is whether the adjudication of a juvenile infraction charge by a traffic hearing officer,

under Welfare and Institutions Code section 255 et seq.,[1] violates the constitutional limitation of such officers' functions to "subordinate

[1]All section references are to the Welfare and Institutions Code unless otherwise indicated. The cited sections (which until 1976 were § 561 et seq.) provide in pertinent part:

Section 255: "The judge of the juvenile court, or in counties having more than one judge of the juvenile court the presiding judge of the juvenile court or the senior judge if there is no presiding judge, may appoint one or more persons of suitable experience, who may be judges of the municipal court or justices of the justice court or a probation officer or assistant or deputy probation officers, to serve as traffic hearing officers on a full-time or part-time basis. A hearing officer shall serve at the pleasure of the appointing judge . . . ."

Section 256: "Subject to the orders of the juvenile court, a traffic hearing officer may hear and dispose of any and all cases wherein a minor under the age of 18 years as of the date of the alleged offense is charged with any violation of the Vehicle Code not declared to be a felony . . . ."

Section 257: "With the consent of the minor, a hearing before a traffic hearing officer or a hearing before a referee or a judge of the juvenile court wherein such minor is charged with such traffic offense may be conducted upon an exact legible copy of a written notice given pursuant to Article 2 (commencing with Section 40500) of Chapter 2 of Division 17 or Section 41103 of the Vehicle Code . . . in lieu of a petition as provided in Article 16 (commencing with Section 650) of this chapter."

Section 258: "(a) Upon a hearing conducted in accordance with Section 257, upon an admission by the minor of the commission of a traffic violation charged, or upon a finding that the minor did in fact commit such traffic violation, the judge, referee, or traffic hearing officer may do any of the following:

"(1) Reprimand the minor and take no further action;

"(2) Direct the probation officer to file a petition as provided for in Article 8 (commencing with Section 325) of this chapter; or

"(3) Make any or all of the following orders:

"(i) That the driving privileges of the minor be suspended or restricted as provided in the Vehicle Code or, notwithstanding Section 13203 of the Vehicle Code or any other provision of law, when the Vehicle Code does not provide for the suspension or restriction of driving privileges, that, in addition to any other order, the driving privileges of the minor be suspended or restricted for a period of not to exceed 30 days.

"(ii) That the minor attend traffic school over a period not to exceed 60 days.

"(iii) That the minor pay to the general fund of the county a sum, not to exceed fifty dollars ($50), and to the Driver Training Penalty Assessment Fund a penalty assessment in the amount provided in Section 42050 of the Vehicle Code for offenses not relating to parking or registration or offenses by pedestrians. Any judge, referee, or traffic hearing officer may waive a penalty assessment if the amount the minor is ordered to pay to the general fund of the county is less than ten dollars ($10).

"(iv) That the probation officer undertake a program of supervision of the minor for a period not to exceed six months.

"(v) That the minor produce satisfactory evidence that the vehicle or its equipment has been made to conform with the requirements of the Vehicle Code pursuant to Section 40150 of the Vehicle Code.

"(vi) That the minor work in a city park or recreational facility or county or regional park for not to exceed 25 hours over a period not to exceed 30 days, during times other than his hours of school attendance or employment. When the order to work is made by a referee or a traffic hearing officer, it shall be approved by a judge of the juvenile court.

"(b) The judge, referee, or traffic hearing officer shall retain jurisdiction of the case until all orders made under this section have been fully complied with."

Section 260: "A traffic hearing officer shall promptly furnish a written report of his

judicial duties" (Cal. Const., art. VI, § 22[2]) or deprives the minor of equal protection or due process. Also at issue is whether the record must show that the minor consented to the abbreviated procedure (§ 257) and waived representation by counsel.

Appellant Kathy was cited for violating Vehicle Code section 21804 (failure to yield right-of-way when entering highway). At her appearance in the juvenile court traffic division of the superior court she declined to plead guilty, and a hearing date was set. On that date a hearing officer heard testimony of the citing police officer and argument by Kathy's father, determined she had committed the offense, and imposed a "10/5" fine ($10 plus $5 penalty assessment). Her request for rehearing was denied by a juvenile court judge (§ 262), and she appeals the denial (§ 395).

1. *Is a juvenile traffic hearing officer constitutionally authorized to hear and decide contested cases?*

Section 255 authorizes juvenile court judges to appoint as traffic hearing officers "one or more persons of suitable experience" who need not be judges. The officer in this case was not a judge.

Section 256 permits the hearing officers to hear and decide charges against a minor of "any violation of the Vehicle Code not declared to be a felony."[3] If the minor consents the hearing may be held on a copy of the

findings and orders to the clerk of the juvenile court. The clerk of the juvenile court shall promptly transmit an abstract of such findings and orders to the Department of Motor Vehicles."

Section 261: "Subject to the provisions of Section 262, all orders of a traffic hearing officer shall be immediately effective."

Section 262: "Upon motion of the minor or his parent or guardian for good cause, or upon his own motion, a judge of the juvenile court may set aside or modify any order of a traffic hearing officer, or may order or himself conduct a rehearing. If the minor or parent or guardian has made a motion that the judge set aside or modify the order or has applied for a rehearing, and the judge has not set aside or modified the order or ordered or conducted a rehearing within 10 days after the date of the order, the motion or application shall be deemed denied as of the expiration of such period."

[2]Article VI, section 22 provides: "The Legislature may provide for the appointment by trial courts of record of officers such as commissioners to perform subordinate judicial duties."

[3]The officers also may hear and decide violations of local traffic ordinances, Harbors and Navigation Code equipment and registration provisions, Penal Code section 602, subdivision (m) (driving vehicle on another's land), or Streets and Highway Code section 126 (disobeying warning against use of highway) and section 27176 (disobeying traffic sign posted by bridge and highway district). They may hear too nonfelony charges under the Fish and Game Code, and a separate section (§ 259) governs the disposition of such cases.

traffic citation, in lieu of a juvenile court petition. (§ 257.) The minor or the parent may request modification or rehearing of the hearing officer's order; a request not granted within 10 days of the order's date is deemed denied. (§ 262; see *In re Conley* (1966) 244 Cal.App.2d 755 [53 Cal.Rptr. 321]; *In re F.E.* (1977) 67 Cal.App.3d 222 [136 Cal.Rptr. 547].)

In this case the hearing was held on February 24, 1977, and the request for rehearing dated March 4 was denied by the judge on April 1. There was no transcript; available to the judge were the notice to appear, the disposition and hearing forms (akin to minutes), the hearing officer's notes of the testimony, and the summarizing memo of a juvenile traffic court supervisor.

■ Kathy contends she was entitled to rehearing because the judge who denied her request did not have a transcript of the proceedings before the hearing officer.[4] She relies on the rule in wardship cases that availability of meaningful review by a judge is required to prevent a juvenile court referee's contested order that adjudges a minor a ward of the court for criminal conduct (§ 602) from violating the limitation on the referee's function to "subordinate judicial duties" (Cal. Const., art. VI, § 22; *In re Edgar M.* (1975) 14 Cal.3d 727 [122 Cal.Rptr. 574, 537 P.2d 406]). **(3)** Denial of an application for judicial rehearing of such an order must be based on review of a transcript of the proceeding before the referee so that the judge may arrive at an independent decision; otherwise the constitutional limitation requires that rehearing be granted as of right. (*In re Damon C.* (1976) 16 Cal.3d 493 [128 Cal.Rptr. 172, 546 P.2d 676].)[5]

■ When serious juvenile misconduct is charged, the referee's subjudicial authority to make a final determination extends to uncontest-

[4]Section 677, providing for transcripts of hearings before juvenile court judges and referees, does not apply to hearings before juvenile traffic hearing officers. Also inapplicable are the juvenile court rules (Cal. Rules of Court, rule 1301(a)) and the provisions for reporting in superior court actions (Code Civ. Proc., § 269).

[5]Denial of rehearing of the referee's decision in such cases is subject also to time constraints: to harmonize the requirement of meaningful review with the legislative policy of expediting dispositions, a request for rehearing that, according to section 252, is "deemed denied" if not granted within 20 days after its receipt (or within a maximum of 45 days with time extensions) is instead granted as of right. (*In re Danny T.* (1978) 22 Cal.3d 918 [150 Cal.Rptr. 916, 587 P.2d 712].) If constitutional considerations were held to require a rehearing as of right on inaction within the shorter time limit applicable in this case (§ 262), the minor could practically always obtain a rehearing: the stated period for acting on the request is only 10 days after the order, and there is no deadline for submitting the request or provision for extending time. Because below we conclude that the hearing officer's adjudication of the traffic infraction was a subordinate judicial duty, those constitutional considerations do not arise.

ed or collateral matters but not to contested adjudications. (*In re Edgar M., supra,* 14 Cal.3d 727, 735.) The adjudication in the present case was contested but dealt with a routine traffic infraction and resulted in imposition of only a small fine. The issue, therefore, is whether the minor nature of the offense converts its contested adjudication into a "subordinate" judicial task.

In 1976 the Legislature authorized municipal courts to allow commissioners and traffic referees to "have the same jurisdiction and exercise the same powers and duties as the judges of the court with respect to any infraction" (Gov. Code, §§ 72190, 72401, subd. (c)). The statute declares that the functions "are subordinate judicial duties within the meaning of Section 22 of Article VI of the California Constitution" (Stats. 1976, ch. 959, § 3, p. 2191). That declaration was sustained in *People* v. *Lucas* (1978) 82 Cal.App.3d 47 [147 Cal.Rptr. 235], which affirmed judgments that after trial by municipal court commissioners found defendants guilty of traffic infractions (violations of Veh. Code, §§ 22350 and 22450). Upholding the "subordinate" nature of those adjudications, *Lucas* took into account that punishments for infractions are markedly lighter than for other offenses[6] and that "the unique and specialized function of trying infraction cases . . . could properly be ranked as 'subordinate' in relation to the diversity and complexity of the other duties of a municipal court judge." (82 Cal.App.3d at p. 54.)

Given their nature, the high volume of infraction cases (*id.* at p. 51, fn. 2) clearly necessitates simplified procedures for their fair and efficient disposition. In other contexts this court often has recognized the permissibly summary handling of infraction cases by excepting them from rules required in misdemeanor cases (*Mills* v. *Municipal Court* (1973) 10 Cal.3d 288, 302, fn. 13 [110 Cal.Rptr. 329, 515 P.2d 273] ["on the record" waiver of constitutional rights as prerequisite to guilty plea];[7] *Gordon* v. *Justice Court* (1974) 12 Cal.3d 323, 326, fn. 2 [115 Cal.Rptr. 632, 525 P.2d 72, 71 A.L.R.3d 551] [necessity of lawyer-judges for trial of offenses punishable by confinement]), by permitting minor traffic charges

---

[6]Infractions are not punishable by imprisonment. (Pen. Code, § 19c.) Most are traffic violations (*Tracy* v. *Municipal Court* (1978) 22 Cal.3d 760, 765, fn. 4 [150 Cal.Rptr. 785, 587 P.2d 227]), punishable by fine of no more than $50 for the first offense, $100 for the second, or $250 for the third within one year (Veh. Code, § 42001), or by attendance at traffic school (Veh. Code, § 42005). (See Gov. Code, § 36900 (same fines for infractions declared by city ordinance; Cal. Misdemeanor Procedure Benchbook (Cont.Ed.Bar 1975 rev.) §§ 21.16, 21.29).)

[7]But see *People* v. *Miner* (1977) 68 Cal.App.3d Supp. 1 [137 Cal.Rptr. 149], holding *Mills* requirement applicable to personally entered pleas in infraction cases.

to be tried without a prosecuting attorney (*People* v. *Carlucci* (1979) 23 Cal.3d 249 [152 Cal.Rptr. 439, 590 P.2d 15]), and by holding conviction of a traffic infraction not a bar to prosecution for a more serious related offense (*In re Dennis B.* (1976) 18 Cal.3d 687 [135 Cal.Rptr. 82, 557 P.2d 514]). Advantages of expediting infraction cases through flexible, innovative procedures are that "defendants gain a swift and inexpensive disposition of their cases without risk of major penalties; and the prosecution, the court system, and ultimately the public benefit because judicial and law enforcement resources are freed to concentrate on serious criminal behavior." (*In re Dennis B., supra,* 18 Cal.3d at p. 695; see too *People* v. *Carlucci, supra,* 23 Cal.3d at p. 257.) ▌ Thus we conclude that the Legislature properly authorized the adjudication of traffic infraction cases by commissioners and referees as part of their "subordinate judicial duties" (Cal. Const., art. VI, § 22).

Parallel aims led to enactment in 1961, as former §§ 561-567 (now §§ 255-258, 260-262), of "provisions which would empower a juvenile traffic hearing officer, appointed by the court, to make final judgments in all traffic cases except those considered serious enough to warrant referral to the juvenile court" (Governor's Special Study Commission on Juvenile Justice, part I—Recommendations for Changes in California's Juvenile Court Law (1960) p. 22).[8] ▌ The minor here argues that the hearing officers' powers nonetheless do not qualify as subordinate judicial duties because the officers' jurisdiction includes not only infractions but also certain misdemeanors, including "any violation of the Vehicle Code not declared to be a felony" (§ 256). Because she was charged only with an infraction, however, she may not challenge the authority of hearing officers in hypothetical misdemeanor proceedings. (*Franklin Life Ins. Co.* v. *State Board of Equalization* (1965) 63 Cal.2d 222, 227 [45 Cal.Rptr. 869, 404 P.2d 477]; *People* v. *Perry* (1931) 212 Cal. 186, 193 [298 P. 19, 76 A.L.R. 1331].)

She contends also that she was exposed to different and more severe penalties than could be invoked against an adult for the same offense. Possible dispositions of cases wherein hearing officers find minors guilty

---

[8]See pages 59-60 for the commission's draft of the cited sections. Part II of the report, A Study of the Administration of Juvenile Justice in California, explains facts prompting the recommendation (at p. 29): "Juvenile courts currently have exclusive jurisdiction over all juvenile offenders under the age of 18 including those involved in traffic violations. A monumental processing problem has been created because more than 100,000 traffic citations are issued annually to minors. As a result, juvenile courts have been forced to adopt various alternative methods for adjudicating such cases; otherwise traffic cases would overwhelm juvenile court calendars."

of traffic violations are listed in section 258 (fn. 1, *ante*). Several of them also are available for adult traffic infractions: reprimand (§ 258, subd. (a)(1)), attendance at traffic school (§ 258, subd. (a)(3)(ii); Veh. Code, § 42005), $50 fine plus penalty assessment (§ 258, subd. (a)(3)(iii); Veh. Code, § 42001), and proof of correction of vehicle defect (§ 258, subd. (a)(3)(v); Veh. Code, § 40150).

■ The remaining dispositions, unavailable for adult infractions, are restrictions on driving for up to 30 days (§ 258, subd. (a)(3)(i)), supervision by a probation officer for up to six months (§ 258, subd. (a)(3)(iv)), or work in a park or recreational facility for up to 25 hours in a 30-day period during other than school or job hours (§ 258, subd. (a)(3)(vi)). Those dispositional provisions do not make the hearing officer's adjudication of the minor's case more than a subordinate judicial duty. A court may suspend driving privileges because of certain infractions by adults; e.g., speeding (Veh. Code, §§ 13200, 22348 et seq.). To authorize suspension for other traffic infractions by minors is not disparate but reflects the precautions with which the Legislature has surrounded the granting of drivers' licenses to persons under 18 (Veh. Code, §§ 12507, 12512-12516, 12650-12653).

Similarly, providing for an order that the probation officer "undertake a program of supervision" for up to six months (§ 258, subd. (a)(3)(iv)) adopts the pre-1976 wording of section 654 and seems to contemplate not involuntary supervision but an attempt by the officer to obtain the "consent of the minor and the minor's parent" (§ 654) to the supervision.

Finally, an order to work in a park or recreational facility must be "approved by a judge of the juvenile court" (§ 258, subd. (a)(3)(vi)). If based on a hearing before the judge the approval converts the order from that of the hearing officer to that of the judge. (See *Edgar M., supra,* 14 Cal.3d 727, 738.) In any event we would not say that a power to require 25 nonschool, nonjob hours of work in a recreational setting unlawfully expands the "subordinate" nature of the officer's adjudication of an infraction.[9]

Thus we conclude that the hearing officers' functions are subordinate judicial duties. Further, the similarity between the functions of those

---

[9]Disposition by direction to a probation officer to file a dependency petition (§ 258, subd. (a)(2)) simply results in presenting issues for resolution in the juvenile court by a judge or by a referee who performs judicial duties under *Edgar M., supra,* 14 Cal.3d 727, and its progeny.

officers in juvenile infraction cases and of municipal court commissioners and referees in adult infraction cases refutes one of the two arguments on which the minor here claims denial of equal protection. ■ ■■■ ■ ■ Her other argument concerns differences in qualifications for office. Commissioners and referees who hear adult cases generally must have been admitted to the bar.[10] Though persons appointed as juvenile traffic hearing officers may include lower court judges, they are required only to be "persons of suitable experience" such as probation officers or assistant or deputy probation officers. (§ 255.) The People concede that the hearing officer who adjudicated the present case may not have been a member of the bar.

The differences in qualifications of commissioners, referees, and hearing officers seem justified by the differing characteristics and needs of adult and juvenile offenders. Though adults and juveniles when operating vehicles have the same duties, juveniles who breach those duties may require programs addressing discrete social and psychological problems that apparently accompany adolescence. Thus the Legislature concluded that juvenile traffic hearing officers should have a broader range of dispositions through which to guide minors into more responsible attitudes toward the driving privilege. The Legislature could reasonably assume that, as to infractions, the goals of the juvenile justice system are better served by personnel familiar with the special problems confronting juveniles, in contrast to attorneys who may not have that familiarity.[11]

Does the use of nonattorneys deny due process? Juvenile traffic infraction cases rarely involve complex issues, can result at most in light penalties, and therefore lack the characteristics that caused adjudication by nonattorney judges to be held violative of due process in *Gordon v. Justice Court, supra,* 12 Cal.3d 323.

---

[10]Municipal court commissioners must have a judge's qualifications (Gov. Code, §§ 72190, 72701); traffic referees must be attorneys or have had five years of experience as a justice court judge during the preceding eight years (Gov. Code, § 72400). There is no constitutional requirement that justice court judges presiding over infraction cases be attorneys (*Gordon v. Justice Court* (1974) 12 Cal.3d 323, 326, fn. 2 [115 Cal.Rptr. 632, 525 P.2d 72, 71 A.L.R.3d 551]), but by statute all who fill vacancies or commence terms as justice court judges on or after January 7, 1975, must be attorneys. (Gov. Code, § 71701; *Eu v. Chacon* (1976) 16 Cal.3d 465 [128 Cal.Rptr. 1, 546 P.2d 289].)

[11]The minor here suffered no loss of liberty requiring strict scrutiny of the legislative classification under principles stated in *People v. Olivas* (1976) 17 Cal.3d 236 [131 Cal.Rptr. 55, 551 P.2d 375].)

■ 2. *Is reversal required because of the record's silence on whether the minor waived counsel and consented to informal adjudication?*

Kathy was represented before the hearing officer by her father, not by counsel. She does not claim that a lawyer should have been appointed but seeks reversal because the record fails to disclose whether she was advised of her right to be represented by retained counsel. She does not assert that she was not so advised or that she was prevented from retaining counsel by ignorance or by misleading conduct of any court officer. She relies simply on the record's silence.

■ Unquestionably she had a right to counsel retained at her own expense. Due process assures that right even when a proceeding is wholly civil. (*Brooks* v. *Small Claims Court* (1973) 8 Cal.3d 661 [105 Cal.Rptr. 785, 504 P.2d 1249]; *Mendoza* v. *Small Claims Court* (1958) 49 Cal.2d 668, 673 [321 P.2d 9].) No statute or rule of court requires, however, that a minor be advised of that right. (See Cal. Rules of Court, rule 1301(a) (juvenile court rules inapplicable to proceedings before traffic hearing officers).)

Statutes governing wardship proceedings under section 650 et seq. require that the minor be advised of the right to be represented by counsel. (§§ 658-659, 700.) Those statutes do not apply to the present traffic proceeding, conducted pursuant to the abbreviated procedure of section 257.[12] That procedure is permitted "in lieu of" a wardship petition but only "[w]ith the consent of the minor" (§ 257).

■ In this case, where the record does not show whether Kathy consented to adjudication under section 257 or was advised of her right to have counsel, we will respect the presumption that official duty has been regularly performed (Evid. Code, § 664). ■ Also, as appellant she has not met her burden of showing error by an adequate record. (See *Calhoun* v. *Hildebrandt* (1964) 230 Cal.App.2d 70, 72 [40 Cal.Rptr. 690]; *In re Salazar* (1962) 205 Cal.App.2d 102 [22 Cal.Rptr. 770].) She complains that without counsel she could not be expected to make the necessary record. Yet she is represented by counsel on appeal who, though the proceedings were not reported, did have available the means to perfect the record by agreed or settled statement. (See Cal. Rules of Court, rules 6, 7, 12(a); *People* v. *Goudeau* (1970) 8 Cal.App.3d 275, 281 [87 Cal.Rptr. 424].)

---

[12] Advising as to rights need not materially encumber or delay a traffic proceeding. (Cf. Veh. Code, § 40901, subd. (c); *Mills* v. *Municipal Court, supra,* 10 Cal.3d 288, 307; Cal. Juvenile Traffic Cts. Assn., Recommended Guideline Manuel for Juvenile Traffic Ct. (1978) pp. 13-14, 16.)

She also invokes the rule that, in criminal appeals, waiver of a right to court-appointed counsel may not be inferred from a silent record. (*In re Lopez* (1970) 2 Cal.3d 141, 147 [84 Cal.Rptr. 361, 465 P.2d 257].) ■ The right to court-appointed counsel is guaranteed in all felony and misdemeanor proceedings. (Cal. Const., art. I, § 15; Pen. Code, § 686; *Tracy* v. *Municipal Court* (1978) 22 Cal.3d 760, 766 [150 Cal.Rptr. 785, 587 P.2d 227]; *Mills* v. *Municipal Court, supra,* 10 Cal.3d 288, 301.) Yet in infraction proceedings that right is denied by statute. (Pen. Code, § 19c (stating exception for incarcerated defendants); see *Mills* v. *Municipal Court, supra,* 10 Cal.3d 288, 302.)

■ We rule that, absent entitlement to court-appointed counsel, due process does not require advice of the right to appear by retained counsel when there are no special circumstances making omission of the advice unreasonable. (*People* v. *Prince* (1976) 55 Cal.App.3d Supp. 19, 34 [127 Cal.Rptr. 296].)[13] Such advice may be necessary in connection with the consent required for a section 257 traffic proceeding to avoid misunderstanding of the effects of waiving a plenary wardship proceeding. That necessity, however, by itself is not enough to require reversal simply because the record is silent on whether the advice was given. Cases in which a juvenile traffic charge that does not carry the right to court-appointed counsel is nonetheless sufficiently serious to warrant the expense of retaining a lawyer are likely to be rare. (*People* v. *Carlucci, supra,* 23 Cal.3d 249, 258; *People* v. *Prince, supra,* 55 Cal.App.3d Supp. 19, 33.) Only in those rare cases is there a possibility of the minor's failing to retain counsel because of ignorance of the right to do so. That possibility does not warrant departure from the rule that error must be shown by the party urging it, particularly in the context of the expeditiousness necessary and desirable in traffic infraction matters.

The contention that the finding of guilt was not sufficiently supported by the evidence is without merit.

The order denying a rehearing is affirmed.

Tobriner, J., Mosk, J., Clark, J., Richardson, J., and Manuel, J., concurred.

---

[13]*Prince,* dealing with rights of an adult in an infraction proceeding, suggests: "Such 'special circumstances' would embrace, for example, the imposition of multiple maximum penalties . . . or proof of gross physical, linguistic or mental inability of the defendant to represent himself or to understand that he has the right and the means to employ counsel." (55 Cal.App.3d Supp. at p. 34, fn. 10.)

**BIRD, C. J.**—I respectfully dissent.

Article VI, section 22 of the California Constitution allows juvenile traffic hearing officers to perform only "subordinate judicial duties." In view of this constitutional limitation, a traffic hearing officer may not make a final decision in a contested juvenile traffic infraction case.

Except in preliminary or uncontested matters, a subordinate judicial officer's findings must be subject to review by a judge before they may become final. (*Rooney* v. *Vermont Investment Corp.* (1973) 10 Cal.3d 351, 366-370 [110 Cal.Rptr. 353, 515 P.2d 297]; *In re Edgar M.* (1975) 14 Cal.3d 727, 732-736 [122 Cal.Rptr. 574, 537 P.2d 406].) The officer's findings are deemed "advisory only," unless the parties have stipulated that he may act as a judge pro tem. (*Id.,* at p. 735.) However, if the officer's findings become final without judicial review, his acts are effectively "the acts of the court itself . . . ," which is precluded under article VI, section 22. (*Id.,* at p. 736.) In this appeal, it must be determined if a juvenile traffic hearing officer is deciding preliminary or uncontested matters and whether his findings and orders become final without judicial review.

A hearing officer in a contested traffic infraction case in juvenile court hears the testimony of all the witnesses, weighs the evidence, resolves any conflicts in the testimony, and gives or withholds credence to particular witnesses. Ultimately, he determines whether the minor is "guilty" of the alleged offense. (See Veh. Code, § 13103.) If he finds in the affirmative, the minor is found to have been "convicted" of a "crime" and sentence is imposed. (*Id.,* § 13105; Pen. Code, § 15.) These are judicial acts and duties. (*Esteybar* v. *Municipal Court* (1971) 5 Cal.3d 119, 127 [95 Cal.Rptr. 524, 485 P.2d 1140]; *People* v. *Superior Court (On Tai Ho)* (1974) 11 Cal.3d 59, 66 [113 Cal.Rptr. 21, 520 P.2d 405].)

The hearing officer is given great latitude in imposing punishment for the offense. (Welf. & Inst. Code, § 258.)[1] His options include the imposition of a fine and a penalty assessment, the suspension or restriction of the minor's driving privileges, and ordering a "program of supervision" under a probation officer. (*Ibid.*) This court has held that "[t]he imposition of sentence and the exercise of sentencing judgment are fundamentally and inherently judicial functions." (*People* v. *Navarro* (1972) 7 Cal.3d 248, 258 [102 Cal.Rptr. 137, 497 P.2d 481].)

---

[1] Unless otherwise indicated, all statutory references are to the Welfare and Institutions Code.

The statute allows the traffic hearing officer's findings to become final without judicial review.[2] Therefore, when the hearing officer decides guilt or innocence, when he imposes punishment, he acts as a final arbiter in a judicial capacity contrary to the Constitution.

This statutory system is constitutionally infirm for another reason. There is no requirement that a transcript be made of the proceedings before the traffiic hearing officer. (See maj. opn., *ante,* at p. 97, fn. 4.) Section 260 requires a written report only of the traffic hearing officer's "findings and orders." This may be nothing more than a summary of the officer's conclusions. As a result, there is no record or "data amply sufficient for" a judge to form "a judgment independent from that of" the officer who initially decided the case. (*In re Edgar M., supra,* 14 Cal.3d at p. 736.) Therefore, "meaningful review" of the subordinate judicial officer's findings and order is impossible.

There is a further constitutional defect. If a traffic hearing officer's findings are in favor of a minor, that order would be a final determination. However, subordinate judicial officers under article VI, section 22 cannot make *final* judgments. (See *In re Edgar M., supra,* 14 Cal.3d at p. 732.)

The majority contend that article VI, section 22 is inapplicable because the proceeding involves a "routine traffic infraction" carrying "only a small fine." (*Ante,* at p. 98.) Is the deprivation of a minor's liberty by placing him on probation for six months a "small fine?"[3] (§ 258, subd. (a)(3)(iv).) Is the suspension or restriction of a minor's driving privileges (subd. (a)(3)(i)) or an order requiring the minor to attend traffic school over a period of 60 days (subd. (a)(3)(ii)) an insignificant sanction? Is a fine up to $50 with a $15 penalty assessment minor? (§ 258, subd. (a)(3)(iii);

[2]Although the minor may apply to a judge of the superior court for a modification or rehearing, his application will be deemed denied if it is not acted upon within 10 days of the traffic hearing officer's orders. (§ 262.) If the court simply allows the time period to lapse, the officer's findings are final.

[3]The majority suggest that "involuntary supervision" is not "contemplate[d]" by the statute. (*Ante,* at p. 100.) Were the consequences not so serious for the minor, this misinterpretation of the statute could be overlooked. Subdivision (a)(3) of section 258 explicitly authorizes the traffic hearing officer to "order [ ]" a "program of supervision," whether the minor or his parents or guardian agree. Section 654, on which the majority rely for their interpretation, has no application to such an order. Section 654 applies to the situation in which a probation officer *recommends* to the minor and his parents or guardian that such a program be undertaken. However, when a probation officer is acting as a traffic hearing officer, section 258 empowers him to *order* such programs of supervision.

Veh. Code, § 42050.) A "fine may bear as heavily on an indigent accused as forced confinement." (*Mayer* v. *City of Chicago* (1971) 404 U.S. 189, 197 [30 L.Ed.2d 372, 380, 92 S.Ct. 410].) In many cases a traffic fine "may constitute a very real hardship for . . . those obliged to pay." (*People* v. *Carlucci* (1979) 23 Cal.3d 249, 257 [152 Cal.Rptr. 439, 590 P.2d 15].) It is not unusual for a minor to face higher insurance rates or the denial of insurance altogether as a result of an infraction conviction. (*Ibid.*) These potential consequences are not insignificant.

This court has consistently focused on the *nature* of the duties performed to determine whether they are in fact "subordinate judicial duties" under article VI, section 22. (See, e.g., *Rooney* v. *Vermont Investment Corp., supra,* 10 Cal.3d at pp. 362-363, fn. 7, 366, 370; *In re Edgar M., supra,* 14 Cal.3d at pp. 733-736.) The majority have overlooked *Rooney* and its holding that subordinate judicial officers may not make *final* determinations of "facts prerequisite to entering judgment." (10 Cal.3d at p. 370.) Clearly, traffic hearing officers are exercising these powers even though it is prohibited under our Constitution.

The use of traffic hearing officers to decide contested cases may be practically and financially desirable. However, there is an insurmountable obstacle which prevents this practice. It is called the Constitution of the State of California.