Filed 6/25/15 Steven F. v. Super. Ct. CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| STEVEN F., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF NAPA COUNTY, <br><br> Respondent; <br><br> NAPA COUNTY DEPARTMENT OF SOCIAL SERVICES, <br><br> Real Party in Interest. | A144038 <br><br> (Napa County <br> Super. Ct. No. JV17619) |

Petitioner Steven F. is the presumed father of infant F. P.[1]  In December 2013, the Napa County Juvenile Court ordered the child detained, that is, removed from petitioner's custody.

The following month, the court sustained the allegations of a petition filed by Real Party in Interest Napa County Department of Social Services (Department) in which it was alleged that F. P. qualified as a dependent child within the meaning of subdivisions (b) and (c) of section 300 of the Welfare and Institutions Code.[2]  The gist of the

---

[1] The minor's mother was involved at all stages of the dependency, but is not a party to this proceeding.

[2] Unless otherwise indicated, statutory references are to this code.

1

allegations was that "the minor sustained injuries as the result of the father physically abusing him"; "[t]he father did not seek out medical care for the minor, despite the minor having obvious and observable injuries to his face and head"; and "the father," who was "currently incarcerated at NCDC [Napa County Department of Corrections]," "uses marijuana and alcohol to the point of significant impairment." There is no reporter's transcript of the jurisdictional hearing, but the minutes and formal jurisdictional order make it clear that petitioner was present, did not contest the petition, and was informed of the dates for the dispositional hearing.

The same is largely true for the unreported dispositional hearing. Petitioner is described as "present in custody," and with having been provided with "copies of reports." The minor was declared to be a dependent child, his placement entrusted to the Department. The Department's report informed the court that "the father was arrested for . . . child cruelty; . . . inflicting injury upon a child; [and] battery with serious bodily injury" and "is currently incarcerated related to these charges," and for these reasons the Department recommended that that he be denied reunification services, in accordance with section 361.5, subdivision and (b)(6) and (c).[3] The court accepted this recommendation, and the recommendation that the mother receive reunification services. Also, again as recommended by the Department, the court concluded: "Visitation between the child and the father would be detrimental to the best interest of the child therefore, no visitation is ordered at this time."

The same is also true for the unreported six-month review hearing. Again, the minutes recited that petitioner was "present in custody," and the formal order stated he

---

[3] "Reunification services need not be provided to a parent . . . when the court finds, by clear and convincing evidence, any of the following: [¶] . . . [¶] [t]he child has been adjudicated a dependent pursuant to any subdivision of Section 300 as a result of . . . the infliction of severe physical harm to the child, . . . and the court makes a factual finding that it would not benefit the child to pursue reunification services with the offending parent . . . ." (§ 361.5, subd. (b)(6).)

"The court shall not order reunification services for a parent . . . described in paragraph . . . (6) . . . of subdivision (b) unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child." (§ 361.5, subd. (c).)

2

received "copies of reports." The court concluded that the mother's progress under her case plan had been "minimal" and terminated reunification services to her. It again decided that "[v]isitation between the child and the father would be detrimental to the best interest of the child therefore, no visitation is ordered at this time." The court set a hearing to decide the permanency placement plan pursuant to section 366.26. The court also advised the parents of their right to file a petition for an extraordinary writ as allowed by California Rules of Court, rules 8.452 and 8.456.

On the date set for the permanency planning hearing, January 8, 2015, Lisa O'Brien substituted in as new counsel for petitioner and "request[ed] a contested hearing be set." The matter was continued to January 15 for an "Offer of Proof Hearing." The minute order for January 15 states that "Ms. O'Brien states she filed the JV 180 form[4] with attachments today as her offer of proof." After hearing "comments of Counsel [¶] . . . The Court finds Ms. O'Brien has filed the improper form for this hearing. Further, Ms. O'Brien has not met the burden of proof and the Court will move forward . . . ." "Pursuant to the request of Father, this matter is set for a contested hearing" on February 3.

Steven F. filed his petition for an extraordinary writ in this court on January 26.[5] The relief he seeks is: (1) "vacate the order for hearing under section 366.26"; (2) "order that reunification services be provided"; (3) "order visitation between the child and the petitioner"; and (4) "visitations with paternal grandmother continue by court order." The grounds for relief were stated in the petition to be: "Father has received no notices of any

---

[4] This is a reference to Judicial Council form JV-180, the means by which a parent can request the court change an existing order in accordance with section 388. Steven F. requested that the court change the no visitation order and allow supervised visitation because "all allegations of abuse involving GBI have been disproven and dropped from the criminal matter. Father plead no contest to a straight 273(d)pc, and was released from jail with credit for time served. Father is not facing any further jail time and will be required to attend counseling and classes re the minor." Petitioner did not include any of the "attachments" in the record provided to this court. Ms. O'Brien represented Steven F. at every stage of the criminal matter, and continues to represent him here.

[5] In response to which we issued a stay of proceedings in the juvenile court.

3

reports or hearings other than an ICWA [Indian Child Welfare Act] notice and a simple notice of hearing. All notices were sent to the address of County Counsel, and not the father. Father was incarcerated from Dec 15, 2013 through and including Jan 7, 2015. The address of the jail is 1125 Third Street, Napa, CA 94559. At the Detention hearing Father completed ICWA 010-A form with his Mothers address for notices. Ten of the twelve notices/reports for the hearings were mailed to County Counsel at 1195 Third Street, Napa."

But in his 20 pages of supporting points and authorities, petitioner ranges far beyond these limited points. In what is virtually a primer on dependency law, he canvasses the principles governing the initial decision to detain a child, and proceeds to the standards for determining the ultimate placement decisions. Particular attention is paid to evidentiary burdens and the procedures attending various stages of the dependency process. However, in casting his net so wide, petitioner faces several daunting and disabling obstacles.

First, the phrasing of his supporting arguments do not make it clear whether petitioner is truly arguing that all the principles he invokes, and the numerous statutes and rules of court he quotes, were violated. (Cf. Cal. Rules of Court, rules 8.204(a)(1)(B) ["Each brief must . . . [s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument, and . . . citation of authority"], 8.412(a) [same rules apply to juvenile appeals and writ petitions].) The point is largely academic because, secondly, by not providing us with reporters' transcripts of the detention hearing, the jurisdictional hearing, the dispositional hearing, or the six-month review hearing, petitioner cannot sustain his burden of proving by an adequate record that the juvenile court did not comply with its official duties (Evid. Code, § 664), and thus that error actually occurred. (*In re Kathy P*. (1979) 25 Cal.3d 91, 102; *In re L. B*. (2003) 110 Cal.App.4th 1420, 1424.)

Third, in the absence of those transcripts, petitioner cannot establish that the points he now advances were presented and rejected at those hearings, thus preserving those points for review. (*In re S. B*. (2004) 32 Cal.4th 1287, 1293; *In re Dakota S*. (2000) 85

4

Cal.App.4th 494, 502.)

And fourth, as this court has repeatedly held: "The waiver rule as applied in dependency cases flows from section 395, under which the dispositional order is an appealable judgment, and all subsequent orders are directly appealable without limitation except for post-1994 orders setting a .26 hearing, which are subject to writ review [Cal. Rules of Court, rule 5.600] and related limitations (§ 366.26, subd. (*l*)). A consequence of section 395 is that an unappealed disposition or postdisposition order is final and binding and may not be attacked on an appeal from a later appealable order. [Citations.] In other words, 'A challenge to the most recent order entered in a dependency matter may not challenge prior orders for which the statutory time for filing an appeal has passed.' [Citation.] The rule serves vital policy considerations of promoting finality and reasonable expedition, in a carefully balanced legislative scheme, and preventing late-stage 'sabotage of the process' through a parent's attacks on earlier orders. [Citation.]" (*In re Jesse W.* (2001) 93 Cal.App.4th 349, 355; accord, *In re Janee J.* (1999) 74 Cal.App.4th 198, 206–207.)

Accordingly, for example, we will not examine petitioner's claim that "removal of the minor from his home based on a single episode of parental misconduct was improper," because this is an issue that should have been addressed on a timely appeal from the dispositional order, where, aided with reporter's transcripts of the detention and jurisdictional hearings, we could undertake a proper examination of this fact-specific claim.

We will not examine petitioner's claim that his submitting on the case worker's report at the jurisdictional hearing was not made with the proper waiver of rights, not only because it would likewise be time-barred, but also because it cannot be verified from the limited record before us. Any deficiencies in the case worker's reports have been lost for review because there is no proof that the claimed defects were timely brought to the attention of the juvenile court. (See *In re Noreen G.* (2010) 181 Cal.App.4th 1359, 1379; *In re Urayna L.* (1999) 75 Cal.App.4th 883, 886–887.)

We will not examine the intimation that the juvenile court should have ordered a bonding study because the court was under no obligation to order such a study on its own initiative (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1338–1340), and there is nothing before us demonstrating that the court was ever asked to direct preparation of a bonding study.

But we can and do resolve petitioner's main point, namely, that he did not get appropriate notice of various hearings. As mentioned, he states in his petition that "All notices were sent to the address of County Counsel, and not the father. Father was incarcerated from Dec 15, 2013 through and including Jan 7, 2015. The address of the jail is 1125 Third Street, Napa, CA 94559. At the Detention hearing Father completed ICWA 010-A form with his Mothers address for notices. Ten of the twelve notices/reports for the hearings were mailed to County Counsel at 1195 Third Street, Napa." Rather than address this important point, the Department urges us to treat it as another issue waived or forfeited for review.

"A defect in notice . . . is a most serious issue, potentially jeopardizing the integrity of the entire judicial process. However, when a parent had the opportunity to present that issue to the juvenile court and failed to do so, appellate courts routinely refuse to exercise their limited discretion to consider the matter on appeal. This is precisely because defective notice and the consequences flowing from it may easily be corrected if promptly raised in the juvenile court. . . . For example, in *In re B. G.* [(1974) 11 Cal.3d 679], the Supreme Court held that a mother had received inadequate notice of a jurisdictional hearing, but concluded she had forfeited her right to raise that issue on appeal when she appeared at subsequent hearings with her counsel in the juvenile court yet failed to challenge the validity of the jurisdictional order." (*In re Wilford J.* (2005) 131 Cal.App.4th 742, 754.) Although this appears to be the situation here, we elect not to treat the issue as lost to review.

"[E]rrors in notice do not automatically require reversal but are subject to the harmless beyond a reasonable doubt standard of prejudice." (*In re J. H.* (2007) 158 Cal.App.4th 174, 183; accord, *In re Marcos G.* (2010) 182 Cal.App.4th 369, 387; see *In*

6

*re James F.* (2008) 42 Cal.4th 901, 918 ["If the outcome of a proceeding has not been affected, denial of a right to notice . . . may be deemed harmless and reversal is not required"].)  The Department does not dispute petitioner's allegation that notices were mailed to him at 1195 Third Street, but his correct address was 1125 Third Street. Petitioner identifies 1195 Third Street as being the County Counsel's office.  The County of Napa Web site lists a number of agencies at that address: <http://www.countyofnapa.org/Contacts/>  (as of June 22, 2015).  The Web site of the County of Napa Department of Corrections has a pair of hyperlinks ("More information" and "Map") which show that the two addresses are only a stone's throw apart from each other, and appear to be across the street from each other: <http://www.countyofnapa.org/Corrections/> (as of June 22, 2015).

Whatever uncertainty may inhere in the manner in which petitioner presents his arguments, we do not understand him as claiming that he was either completely ignorant or completely absent from the dependency proceedings.  For example, he states in his petition that he was present at the detention hearing (Dec. 18, 2013), and in his reply that he "appeared at the Disposition Hearing on March 11, 2014."  Petitioner's counsel confirmed at oral argument that petitioner was indeed present at these hearings.  These admissions corroborate the minutes for the dispositional hearing which show petitioner as being "present in custody."  This in turn lends support to the veracity of the minutes for the jurisdictional and six-month review hearings that also show petitioner as being "present in custody" and in receipt of the appropriate reports.

These recitals support an inference that petitioner did in fact receive notice of all significant hearings.  We note that each of the proofs of service using 1195 Third Street also have "NCDC, #201303853," an obvious reference to petitioner's current status as a resident of the county jail.  It thus appears more than likely that if the notices and reports were sent to 1195 Third Street, they were redirected across the street to the Department of

7

Corrections, and were then passed on to petitioner.[6] The alternative is to accept that the juvenile court conducted a dependency in absentia. So long as petitioner has not provided us with the relevant reporter's transcripts, we cannot accept that conclusion. (*In re Kathy P.*, *supra*, 25 Cal.3d 91, 102; *In re L. B.*, *supra*, 110 Cal.App.4th 1420, 1424.) We therefore conclude that any notice error was not prejudicial. (*In re James F.*, *supra*, 42 Cal.4th 901, 918; *In re J. H.*, *supra*, 158 Cal.App.4th 174, 183.)

The petition for extraordinary relief is denied on its merits, and is final as to this court forthwith. (Cal. Rules of Court, rules 8.452(h)(1), 8.490(b)(2)(A).) The stay heretofore issued is dissolved.

---

[6] This inference, together with petitioner's acknowledgement that he was present at two of the four hearings, also suffice to defeat petitioner's argument that the juvenile court violated Penal Code section 2625, subdivision (d), which provides in pertinent part: "Upon receipt by the court of a statement from the prisoner or his or her attorney indicating the prisoner's desire to be present during the court's proceedings, the court shall issue an order for the temporary removal of the prisoner from the institution, and for the prisoner's production before the court. No . . . petition to adjudge the child of a prisoner a dependent child of the court pursuant to subdivision . . . (b) [or] (c) . . . of Section 300 of the Welfare and Institutions Code may be adjudicated without the physical presence of the prisoner or the prisoner's attorney, unless the court has before it a knowing waiver of the right of physical presence signed by the prisoner or an affidavit signed by the warden, superintendent, or other person in charge of the institution, or his or her designated representative stating that the prisoner has, by express statement or action, indicated an intent not to appear at the proceeding." Although petitioner cites this provision, he does not flat out assert that he was *not* present, nor does he positively state that he did not make a valid waiver of his presence in conformity with the statute. Just as it defies belief that petitioner appeared at two of the hearings without getting notice of some kind, it stretches credulity to conclude that the juvenile court made an order for his presence at only two of the four hearings.

 

                                   _____

                                   Richman, J.

We concur:


_____

Kline, P.J.


_____

Miller, J.