Filed 7/31/25  Saini v. Klimchok CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| REENU SAINI, | H051245 |
| Plaintiff and Appellant, | (Santa Clara County Super. Ct. No. 19CV354918) |
| v. | |
| ELIZABETH KLIMCHOK et al., | |
| Defendants and Respondents. | |

Reenu Saini appeals from a judgment entered in favor of Elizabeth and Marc Klimchok (hereafter the Klimchoks) following a bifurcated court trial on the Klimchoks' affirmative defense that the parties had agreed to a binding settlement at a mandatory settlement conference.  Saini argues that the trial court erred in concluding that a settlement agreement had been reached because the purported agreement: 1) lacks "mutuality of obligation"; 2) lacks consideration; and 3) is ambiguous as to the terms of a mutual release.  Saini also contends the trial court improperly considered hearsay testimony and evidence at the bifurcated trial.

As we explain below, Saini's showing on appeal is insufficient and we shall affirm the judgment.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. Procedural background

### 1. The pleadings[1]

On September 16, 2019, Saini filed a complaint for unlawful detainer against the Klimchoks, followed by a first amended complaint, filed on November 22, 2019, listing a single cause of action for fraud. The Klimchoks cross-complained against Saini, and their amended cross-complaint, filed on July 20, 2020, alleged causes of action for: breach of the implied warranty of quiet enjoyment, violation of the "Mountain View Community Stabilization and Fair Rent Act," "negligent management of property," breach of the implied warranty of habitability, violation of Civil Code section 52.1, assault, intentional infliction of emotional distress, defamation per se, interference with contract, and interference with prospective economic relations.

### 2. Mandatory settlement conference

The parties attended a mandatory settlement conference (MSC) on September 14, 2022. Judge Carol Overton presided over the MSC, and at the end of the day, it appeared that the parties had reached an agreement. At 5:08 p.m. on that same day, counsel for the Klimchoks sent an email to Saini's attorney, Charles J. Smith, and Judge Overton memorializing the terms of the settlement, but when Judge Overton recited those terms a few minutes later, Saini objected. Judge Overton continued the MSC to September 16. The September 16, 2022 minute order briefly memorialized both the initial and continued MSC and noted that "Judge Overton advised that this case was in limbo because [Saini]

---

[1] Saini states in her opening brief that the allegations set forth in the pleadings are not relevant to the issues raised on appeal. The Klimchoks appear to agree but note that they have referenced their amended cross-complaint in their brief "simply so the court has an understanding of what claims were given up, not to argue" their merits. We reference the parties' pleadings and the causes of action stated therein for context and background purposes only.

was failing to follow through on the settlement that was reached." The court vacated the September 19, 2022 trial date.

### 3. Bifurcated trial on affirmative defense and order

On January 18, 2023, the trial court granted the Klimchoks' motion for leave to file an amended answer to add an affirmative defense of settlement as well as their associated motion to bifurcate the trial on that affirmative defense. The matter was set for a court trial on March 6, 2023.

At the bifurcated trial, the court admitted three exhibits, consisting of: 1) the Klimchoks' amended answer to Saini's first amended complaint; 2) five emails exchanged by counsel for the Klimchoks and counsel for Saini between September 14, 2022, and September 16, 2022; and 3) the September 19, 2022 minute order. Carlos Jato, counsel for the Klimchoks, was the only witness to testify. The record does not reflect that Saini offered any exhibits or testimony on her behalf.

On March 24, 2023, the court issued a written order finding in favor of the Klimchoks on their affirmative defense of settlement. In its order, the trial court noted that it found "Jato's testimony credible[] … [and] that [Saini] orally agreed to the settlement during the MSC." The court determined that Saini's subsequent rejection "at the end of the MSC is not dispositive," indicating that "Judge Overton's meeting with the parties at the end of the MSC" was to "identify[] ambiguities or needed clarifications, not … obtaining initial assent to the settlement." The court further indicated that the "two key terms" of the settlement were that Saini would pay "$7500"[2] to the Klimchoks and that payment would occur within 45 days.

---

[2] In the subsequent judgment, entered July 20, 2023, the trial court indicated that the "correct amount is $7750" and that the March 24, 2023 order's reference to "$7500 … was an inadvertent error."

3

## 4. *Motion for reconsideration and appeal*

On April 3, 2023, Saini moved for reconsideration of the March 24, 2023 order. In her motion, Saini argued that she never offered or agreed to settle the matter for "$7500" and that the "last offer discussed with Judge [] Overton was $5000." However, according to Saini, "when Judge Overton indicated the Klimchoks would accept said amount, Saini would not agree to the settlement either for said amount or the terms of payment." In support of her motion, Saini attached a declaration from her attorney, Smith, in which he stated: "At the [MSC] … my recollection is that the highest offer to settle made by [] Saini was $5000 and [] Sain[i] never agreed to any terms of payment, cost or fee waiver, and other typical components of a settlement. When Judge Overton indicated that the Klimchoks would accept $5000, [] Sain[i] reconsidered and would not agree to confirm such a settlement or agree to any terms." Saini also indicated that Smith "has reached out to Judge Overton to inquire whether she has her notes or memorandum from the [MSC] to verify the facts set forth herein[] [and he] will seek to supplement this motion when Judge Overton responds."

The Klimchoks' opposition pointed out that Saini had never previously argued that she did not offer more than $5000 to settle the case, nor had she otherwise disputed the terms of the settlement or its enforceability. Instead, at the bifurcated trial, Saini and her counsel argued that the settlement was unenforceable pursuant to Code of Civil Procedure section 664.6. The Klimchoks also noted that, in the emails exchanged between Smith and Jato that were admitted into evidence, Smith never stated that Saini's highest offer was for $5,000 but only asserted, " 'my client did not agree.' " Finally, neither Smith nor Saini offered any evidence or testimony at the bifurcated trial to refute Jato's testimony about the conduct of the MSC and the agreement that was reached. The Klimchoks also asserted that, during Smith's cross-examination of Jato, Smith did not ask Jato about the claim that Saini did not offer more than $5,000 to settle the case.

After taking the matter under submission, in a written order dated June 26, 2023, the trial court denied the motion for reconsideration on the ground that the "new or additional facts" presented by Saini, i.e., Smith's declaration stating that Saini never offered more than $5,000, could have been presented at the bifurcated trial yet Saini did not explain why it was not. The trial court also addressed Saini's assertion that Smith had asked Judge Overton for her notes or memoranda from the MSC, stating "[i]n the Court's view, it is improper for a settlement judge to testify (either directly or through notes) about the details of a settlement conference. Therefore, the Court would not rely upon such notes even if Judge Overton had produced them."

Saini filed a notice of appeal on July 18, 2023. Judgment was entered on July 20, 2023, directing that the Klimchoks "shall recover from Plaintiff and Cross-Defendant Reenu Saini the total cumulative sum of $7,750.00 within forty-five days from the date of this judgment being entered. [Fn. omitted.]" The judgment further specified that the parties were to bear their own costs and attorney fees.

By separate order, this court on its own motion deemed the July 18, 2023 notice of appeal to have been filed on the same date as the judgment (July 20, 2023).

## II. DISCUSSION

### A. Saini's November 7, 2024 motion to augment the record

Before addressing the issues raised on appeal, we turn to Saini's November 7, 2024 motion to augment (November 7 motion to augment) the record on appeal, which we deferred for consideration with the appeal by separate order dated December 13, 2024. For background purposes, we recount the steps relating to the preparation of the record which preceded this motion.

Saini initially designated a clerk's transcript, identifying specific documents to be included therein, as well as reporter's transcripts from both the March 6, 2023 court trial and the June 12, 2023 hearing on her motion for reconsideration, to be prepared as the

5

record on appeal.[3]  The clerk's transcript, filed in this court on September 29, 2023, was 87 pages in length.

On March 1, 2024, Saini moved to augment the record on appeal to include the Klimchoks' list of exhibits submitted at the March 6, 2023 court trial.  We granted the motion to augment on March 15, 2024.

On June 7, 2024, Saini filed a second motion to augment the record, this time to include the July 20, 2023 judgment.  We granted this second motion on June 27, 2024.

After Saini filed her opening brief on July 9, 2024,[4] the Klimchoks moved to augment the record on September 17, 2024, to include Saini's original complaint for unlawful detainer as well as their amended cross-complaint.  Saini opposed this motion, but we granted it on October 24, 2024.  The Klimchoks, having previously requested and obtained extensions of time, filed their respondents' brief on November 5, 2024.

Two days after respondents' brief was filed, Saini filed the November 7 motion to augment in which she seeks to augment the record with an additional 61 documents totaling 421 pages.  The Klimchoks filed an opposition to this motion on the grounds that it is untimely, the documents are largely irrelevant to the issues raised on appeal, and that it was filed in bad faith.

We agree with the Klimchoks that the November 7 motion to augment is untimely. We are mindful that California Rules of Court, rule 8.155(a), is to be construed liberally. (*People v. Brooks* (1980) 26 Cal.3d 471, 484; *McCarthy v. Mobile Cranes, Inc.* (1962) 199 Cal.App.2d 500, 502.)  However, "in view of the discretionary nature of granting or denying an augmentation request, the desirability of establishing and solidifying the

---

[3] The clerk of the Santa Clara County Superior Court certified by affidavit that neither of those proceedings were transcribed and therefore no reporter's transcripts were included in the record on appeal.

[4] After the initial record on appeal was filed on September 29, 2023, Saini had requested and obtained multiple extensions of time to file her opening brief on appeal.

record as early as possible and the supervisorial responsibility of this court over appeals, informal requests for augmentation made after a reasonable time has expired from receiving the record on appeal, and particularly as late as those contained in briefs, will be denied absent a strong showing of unusual or unavoidable circumstances giving rise to the delay." (*People v. Preslie* (1977) 70 Cal.App.3d 486, 492.) Saini has made no such showing and offered no explanation for her delay in seeking to augment the record with these voluminous documents, all of which could have been identified in her initial designation of the clerk's transcript or certainly could have been included in a motion to augment filed *prior* to the parties filing their respective briefs.

Accordingly, Saini's November 7 motion to augment is denied.[5]

### B. Issues on appeal

Saini raises three arguments on appeal: 1) the purported settlement agreement is not supported by a mutuality of obligation or consideration, 2) the purported settlement agreement is ambiguous and therefore unenforceable, and 3) the trial court's March 23, 2023 order was based on inadmissible hearsay.[6]

---

[5] We further note that, even if we were to grant this motion to augment, we do not discern any documents contained therein which have any relevance to the issues Saini presents on appeal, namely whether the trial court erred in finding, in the bifurcated trial, that Saini agreed to settle the case or erred in admitting certain evidence at that proceeding.

[6] California Code of Civil Procedure, section 1008, subdivision (g) provides: "An order denying a motion for reconsideration made pursuant to subdivision (a) is not separately appealable. However, if the order that was the subject of a motion for reconsideration is appealable, the denial of the motion for reconsideration is reviewable as part of an appeal from that order." However, Saini makes no argument regarding that motion in her opening brief. We therefore consider the claim forfeited. (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 419 [contention not raised in the opening brief is forfeited].)

7

### 1. Applicable legal principles

On appeal, "[w]e presume there is evidence to support every finding unless the appellant demonstrates otherwise and we draw all reasonable inferences from the record to support the judgment." *(Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th 413, 420; *Glendale Fed. Sav. & Loan Assn. v. Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 152.) A corollary to this rule is that "to be successful on appeal, an appellant must be able to affirmatively demonstrate error on the record before the court." *(In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 822.)

"A settlement is an agreement to terminate or forestall all or part of a lawsuit. [Citation.] It need not be in writing. [Citations.] Compromise settlements are governed by the legal principles applicable to contracts generally. [Citations.] A settlement contract also has the attributes of a judgment in that it is decisive of the rights of the parties and serves to bar reopening of the issues settled. Absent a fundamental defect in the agreement itself the terms are binding on the parties. [Citations.]" *(Gorman v. Holte* (1985) 164 Cal.App.3d 984, 988–989.) "Oral agreements to compromise and settle lawsuits reached at judicially supervised settlement conferences are enforceable in a number of ways, including a motion pursuant to Code of Civil Procedure section 664.6, by motion for summary judgment, by separate suit in equity, or by amendment of the pleadings to raise the settlement as an affirmative defense. [Citations.]" *(Id.* at p. 989.)

We now address the more specific standards of review that apply to Saini's contract arguments and her argument that the trial court erred in admitting certain evidence at the bifurcated court trial.

### a. Mutuality of obligation/consideration

As Saini notes in her opening brief, "[g]enerally, mutual assent is a question of fact, but if the material facts are certain or undisputed, the existence of a contract is a

8

question for the court to decide." She also asserts, as to consideration, that its existence in a contract "is a question of law reviewed de novo on appeal."[7] Although Saini appears to contend that the "material facts are certain or undisputed" and we should therefore apply de novo review, we do not agree.

"Where the existence of a contract is at issue and the evidence is conflicting or admits of more than one inference, it is for the trier of fact to determine whether the contract actually existed. But if the material facts are certain or undisputed, the existence of a contract is a question for the court to decide." (*Bustamante v. Intuit, Inc*. (2006) 141 Cal.App.4th 199, 208.) Similarly, "[w]here the evidence on the negotiations forming the basis of the alleged oral contract is in conflict, the question is one of fact, and it is for the trial court to determine from the evidence whether a contract is proven." (*Townsend v. Flotill Products, Inc.* (1947) 82 Cal.App.2d 863, 866.) We review those factual findings for substantial evidence. (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 987.)

In this case, the entirety of Saini's argument is that she *never* agreed to settle the case on the terms described by the Klimchoks and thus that no agreement was formed. Therefore, she is disputing the conflicting evidence supporting the existence of a contract—a question of fact—and we review the trial court's factual findings for substantial evidence.

---

[7] Saini's citation to *Orcilla v. Big Sur, Inc.* (2016) 244 Cal.App.4th 982 (*Orcilla*) is inapposite. *Orcilla* involved an appeal taken from a judgment after a demurrer was sustained without leave to amend. The only standard of review discussion in that case relating to contracts involved the standard of review applied to determine whether a contract is unconscionable and therefore unenforceable. (*Id*. at p. 997.) The *Orcilla* court discussed consideration as an essential element of a contract, but only in the context of concluding that the plaintiff in that case had failed to allege sufficient consideration to support their claimed oral contract. (*Id*. at p. 1006.)

### b. Ambiguity

Saini again cites *Orcilla*, *supra*, for the proposition that "[t]he determination of whether a contract term is ambiguous, and the interpretation of the term are questions of law subject to de novo review on appeal." *Orcilla* does not discuss ambiguity in this context at all.

"When the parties dispute the meaning of a contract term, the trial court's first step is to determine whether the term is ambiguous, i.e., it is 'reasonably susceptible' to either of the meanings urged by the parties. [Citation.]" (*Curry v. Moody* (1995) 40 Cal.App.4th 1547, 1552.) "If, in light of the language of the contract and the extrinsic evidence as to its meaning, the trial court determines the language is 'reasonably susceptible' to either of the meanings urged by the parties the court moves on to the second step which is to determine just what the parties intended the contract term to mean. [Citation.] [¶] The trial court's ruling on the first step, the threshold question of ambiguity, is a question of law subject to our independent review. [Citation.] [¶] The trial court's ruling on the second step, the construction to be given to an ambiguous contract term, is a question of law subject to our independent review if no extrinsic evidence was introduced as to the meaning of the contract or, if extrinsic evidence was introduced, this evidence was not in conflict. We apply the substantial evidence test only when conflicting evidence was introduced as to the meaning of the contract term. In that instance, any reasonable construction of the contract will be upheld if it is supported by substantial evidence. [Citation.]" (*Id.* at pp. 1552–1553.)

In this case, there is no indication that the trial court was *ever* asked to determine if any of the terms of the settlement agreement were ambiguous, let alone that it resolved any such question by examining the language of the contract or any admissible extrinsic evidence to support the parties' conflicting interpretations.

10

However, we need not decide the appropriate standard of review to apply to Saini's claim of ambiguity. As discussed more fully below, we cannot on this record conclude that this issue was raised in the trial court and there is no mention of it in the trial court's March 24, 2023 order or the July 20, 2023 judgment. Therefore, it is not properly before us and will not be considered on appeal. (*Hepner v. Franchise Tax Bd.* (1997) 52 Cal.App.4th 1475, 1486.)

### c. Admissibility of evidence

Saini argues that the trial court erred by admitting Jato's testimony at the bifurcated trial about what he was told by Judge Overton and also by admitting Jato's email memorializing Judge Overton's statements.[8] She asserts that "[t]he admission of hearsay evidence, when objected to, is reviewed for an abuse of discretion. However, the failure to object to hearsay evidence does not automatically validate its admission, especially when its probative value is significantly outweighed by the risk of undue prejudice."

We review a trial court's evidentiary rulings for abuse of discretion. (*City of Ripon v. Sweetin* (2002) 100 Cal.App.4th 887, 900.) The court abuses its discretion when it makes "arbitrary, capricious, or patently absurd" decisions. (*Hernandez v. Amcord, Inc*. (2013) 215 Cal.App.4th 659, 678.) "To obtain reversal based on the erroneous admission of evidence, the record must show a timely objection making clear that specific ground. ([Evid. Code,] § 353; *In re C.B.* (2010) 190 Cal.App.4th 102, 132 [117 Cal.Rptr.3d 846] [hearsay objections 'waived by the failure to object below'].) Lack of such objection deprives the proponent of the evidence an opportunity to establish a better

---

[8] Saini claims Jato's testimony regarding what Judge Overton told him that Saini said at the MSC constitutes "double hearsay." In her view, Jato's email memorializing that "double hearsay" was therefore "triple hearsay."

record or some alternative basis for admission. [Citation.]" (*Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 726, fn. omitted.)

***2. Saini's claims barred by lack of adequate record on appeal***

All of Saini's claims fail because the record is simply inadequate to evaluate them. Her claims that no settlement agreement was formed, either due to a lack of mutuality of obligation or a lack of consideration, involve questions of fact that the trial court has resolved against her. Further, there is nothing in the record to show that Saini objected to any of the terms of the settlement on the ground that they were ambiguous or that the trial court ever considered or made any findings on that question. We also have no transcript from the bifurcated trial from which we could examine whether there was substantial evidence presented at that trial to support the court's factual findings.

As noted in *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181 (*Foust*), "[g]enerally, appellants in ordinary civil appeals must provide a reporter's transcript at their own expense. [Citation.] In lieu of a reporter's transcript, an appellant may submit an agreed or settled statement. [Citations.]" (*Id.* at p. 186.)

Saini argues in her reply brief that the lack of reporter's transcripts was the consequence of the trial court failing to hold a "formal hearing pursuant to [Code of Civil Procedure] [s]ection 664.6." However, Saini offers no explanation as to why, in the absence of any reporter's transcripts from the hearings at issue, she did not seek the preparation of a settled statement from the trial court instead.[9] Saini also fails to explain her assertion that she would have somehow obtained a reporter's transcript from a hearing under Code of Civil Procedure section 664.6 even though she failed to obtain one from the bifurcated trial.

---

[9] "When oral proceedings are not reported or cannot be transcribed, an appellant may proceed by way of a settled statement in lieu of a reporter's transcript. (Cal. Rules of Court, rule 8.137(a).)" (*Von Nothdurft v. Steck* (2014) 227 Cal.App.4th 524, 534.)

In *Foust*, the court outlined the many cases in which "appellate courts have refused to reach the merits of an appellant's claims because no reporter's transcript of a pertinent proceeding or a suitable substitute was provided. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295–1296 [240 Cal.Rptr. 872, 743 P.2d 932] [attorney fee motion hearing]; *Ballard v. Uribe* (1986) 41 Cal.3d 564, 574–575 [224 Cal.Rptr. 664, 715 P.2d 624] (lead opn. of Grodin, J.) [new trial motion hearing]; *In re Kathy P.* (1979) 25 Cal.3d 91, 102 [157 Cal.Rptr. 874, 599 P.2d 65] [hearing to determine whether counsel was waived and the minor consented to informal adjudication]; *Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 447 [94 Cal.Rptr.2d 143] [trial transcript when attorney fees sought]; *Estate of Fain* (1999) 75 Cal.App.4th 973, 992 [89 Cal.Rptr.2d 618] [surcharge hearing]; *Hodges v. Mark* (1996) 49 Cal.App.4th 651, 657 [56 Cal.Rptr.2d 700] [nonsuit motion where trial transcript not provided]; *Null v. City of Los Angeles* (1988) 206 Cal.App.3d 1528, 1532 [254 Cal.Rptr. 492] [reporter's transcript fails to reflect content of special instructions]; *Buckhart v. San Francisco Residential Rent etc., Bd.* (1988) 197 Cal.App.3d 1032, 1036 [243 Cal.Rptr. 298] [hearing on Code Civ. Proc., § 1094.5 petition]; *Sui v. Landi* (1985) 163 Cal.App.3d 383, 385–386 [209 Cal.Rptr. 449] [motion to dissolve preliminary injunction hearing]; *Rossiter v. Benoit* (1979) 88 Cal.App.3d 706, 713–714 [152 Cal.Rptr. 65] [demurrer hearing]; *Calhoun v. Hildebrandt* (1964) 230 Cal.App.2d 70, 71–73 [40 Cal.Rptr. 690] [transcript of argument to the jury]; *Ehman v. Moore* (1963) 221 Cal.App.2d 460, 462 [34 Cal.Rptr. 540] [failure to secure reporter's transcript of settled statement].)" (*Foust*, *supra*, 198 Cal.App.4th at pp. 186–187.)

The court further explained that "[t]he reason for this follows from the cardinal rule of appellate review that a judgment or order of the trial court is presumed correct and prejudicial error must be affirmatively shown. [Citation.] 'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made

13

by the appellate court. "[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented." ' [Citation.] This general principle of appellate practice is an aspect of the constitutional doctrine of reversible error. [Citation.] ' "A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed." ' [Citation.] 'Consequently, [appellant] has the burden of providing an adequate record. [Citation.] Failure to provide an adequate record on an issue requires that the issue be resolved against [appellant].' [Citation.]" (*Foust*, *supra*, 198 Cal.App.4th at p. 187.)

Saini's claims that the trial court erred in finding that she entered into a settlement agreement and by admitting certain evidence at the bifurcated court trial cannot be resolved on an appeal utilizing only the clerk's transcript. Without a reporter's transcript or suitable replacement from that proceeding, we are unable to meaningfully review Saini's arguments on appeal. Saini seems to want this court to reevaluate the credibility of the only witness who testified at the court trial[10] and reweigh the evidence presented below, but we can do neither. (*Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959,

---

[10] Saini suggests that the Klimchoks should have subpoenaed Judge Overton to testify as a witness at the bifurcated court trial, as she was "[t]he only person who [] had first-hand knowledge of any offers and acceptances that the parties extended during the settlement conference and what the specific terms offered and accepted were." While we need not and do not decide this question, it appears that any such effort to elicit testimony from Judge Overton would be barred by Evidence Code section 703.5 ("No person presiding at any judicial or quasi-judicial proceeding, and no arbitrator or mediator, shall be competent to testify, in any subsequent civil proceeding, as to any statement, conduct, decision, or ruling, occurring at or in conjunction with the prior proceeding, except as to a statement or conduct that could (a) give rise to civil or criminal contempt, (b) constitute a crime, (c) be the subject of investigation by the State Bar or Commission on Judicial Performance, or (d) give rise to disqualification proceedings under paragraph (1) or (6) of subdivision (a) of Section 170.1 of the Code of Civil Procedure.")

14

968 [appellate court defers to trier of fact regarding credibility of witnesses]; *Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631 [85 Cal.Rptr.2d 386].)

Because Saini has not affirmatively demonstrated error, we draw all inferences from the record to support the judgment.

### C. *Arguments raised in reply*

Saini raises several arguments for the first time in her reply brief on appeal. Specifically, she argues: 1) her due process rights were violated by the trial court's "failure to conduct a noticed, adversarial hearing" pursuant to Code of Civil Procedure section 664.6; 2) Jato "improper[ly] … functioned simultaneously as both advocate and the key fact witness" at the bifurcated trial and therefore violated rule 3.7 of the American Bar Association Model Rules of Professional Conduct and California law; and 3) her own "lack of affirmative conduct" in partial performance of the agreement "strongly suggests that no enforceable settlement" was reached. We deem these arguments waived due to Saini's failure to raise them in her initial briefing.

Appellate courts ordinarily do not consider new issues raised for the first time in an appellant's reply brief because to do so " 'would deprive the respondent of an opportunity to counter the argument.' [Citation.] 'Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant.' [Citation.]" (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.) " ' "Hence the rule is that points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before." ' [Citation.] [¶] ... '[T]he court may properly consider them as waived ... .' " (*Id.* at pp. 764–765.) Saini offers no excuse or explanation for not presenting these arguments in her opening brief and we decline to consider them. (*Id.* at p. 765.)

### III.    DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

15

_____
WILSON, J.

WE CONCUR:


_____
GROVER, ACTING P. J.


_____
DANNER, J.


*Saini v. Klimchok et al.*
H051245